## Perez F. Briggs *versus* Bartlett Murdock.

Where the direction to the constable, in a warrant for calling an annual town meeting, was, to warn by posting up notice, and he returned, "pursuant to the warrant I have notified" &c., without saying how, the return was held to be sufficient evidence that the meeting was legally warned.

So of a return by the officer, that he had notified the inhabitants "as the law directs."

So of a return without date, "agreeable to the within warrant I have notified the inhabitants of &c. of the time, place and purpose of the within meeting."

Where the usual mode of warning town meetings was by posting up notice on the meetinghouse, which was used for a town house, and the meetinghouse having been pulled down, a meeting was warned by posting up notice at the house of an individual, and afterwards, a town house having been built in connection with a new meetinghouse and no mode of notifying having been agreed on by the town, notice of a meeting was posted on the town house, it was *held*, that such meeting was duly warned.

Where the oath of office is administered to a town officer in open town meeting, by a justice of the peace, in presence of the town clerk, the clerk's record of the fact is competent evidence of the administration of the oath.

It is competent to one chosen town clerk, to make a record of his own election and qualification.

The *St.* 1797, *c.* 69, provides that the towns of Rochester, Wareham and Carver shall, at their town meeting in the fall of the year annually, choose a committee of three persons in each town, for the preservation of alewives in Weweantit river. The inhabitants of Wareham, at a town meeting in November, chose three persons "committee of herrings at the west end of the town." And it appearing that in Wareham and its vicinity the names *herrings* and *alewives* are used indiscriminately for the same species of fish, that the Weweantit lies in the west part of Wareham, that there is no other stream in that part of the town which is frequented by that species of fish, and that no other committee for the Weweantit was chosen, it was *held*, that there was competent evidence to go to the jury, that the herring committee thus chosen was the committee contemplated by the statute.

So of an election by the inhabitants of Rochester, at a town meeting in October, of three persons "a committee as inspectors of Weweantit river," it appearing that no other committee was chosen for this purpose, and that the committee were denominated committee-men or inspectors indiscriminately.

So of an election by the inhabitants of Carver, at a town meeting in September, of three persons "herring committee," it appearing that all the fishing places in Carver communicate with the Weweantit river, that the herrings or alewives all come up that river to the several streams and ponds in the town, and that no other herring committee was chosen that year, nor more than one such committee in each year for several years past.

The statute requires that the committee shall be sworn "to the faithful and impartial performance of their duty in the same manner as other town officers"; and in an action for a penalty under the statute, it was *held*, that the fact that the committee were sworn in open town meeting by a justice of the peace, might be proved by parol evidence, it being testified that no record of it had been made by the town clerk or by the magistrate.

In addition to the common form of an official oath, the committee were sworn, "that if any dam or other obstruction should be placed in the way of the fish, it should be removed agreeable to the statute." It was *held*, that this addition did not render the administration of the oath invalid.

26 *

Briggs
*v.*
Murdock.

So an oath in the following form was held to be sufficient:—" you being chosen a committee to preserve the fish called herrings or alewives in the Weweantit river and its branches, will faithfully perform the duties of your trust."

The treasurer of either of the towns above named being empowered by the statute, " upon the complaint of any of the committee," to sue for the recovery of forfeitures under the statute, and the committee having voted to prosecute the defendant for a forfeiture, and instructed the plaintiff, who was one of the committee and the treasurer of one of the towns, to bring the suit, it was *held* that there was a sufficient complaint.

The declaration alledged that the committee directed the defendant, the owner of a dam on the Weweantit river, to open a sluice-way to the bed of the river and to keep the same open for a limited period, but only the first part of the allegation was proved. But as by the statute the not opening a sluice-way when required, and the not keeping the same open, are distinct offences, and the violation assigned was the not opening, it was *held* that the variance was not material.

The direction of the committee to the defendant, to open a passage in his dam down to the bed of the river, without specifying any width, was held to be sufficiently definite to require a compliance on the part of the defendant, the word *passage, ex vi termini*, meaning an opening of sufficient width to permit the water to run out freely and the fish to pass up.

The objection, that the direction did not fix the time during which the passage was to be kept open, was held to be invalid, because the time might be determined by a subsequent order.

As the statute requires that the owner of a dam shall, for such term and in such manner as the committee shall direct, open a sufficient sluice-way for the passage of the fish, it was *held*, that unless the committee act corruptly or under unjustifiable motives, it is not competent to the owner of the dam to object that their direction is unreasonable, but their direction is conclusive on all persons.

Where the plaintiff, in the Court of Common Pleas, not being prepared for trial, moved for a continuance which was granted on terms which he considered unreasonable, and he therefore suffered judgment to be rendered against him and appealed, and upon the appeal recovered less than one hundred dollars, and in this Court the terms of the continuance imposed in the court below were not deemed unreasonable, it was *held* that the plaintiff was entitled to his costs in the Common Pleas only, and the defendant, to his costs on the appeal.

THIS was an action of debt upon *St.* 1797, *c.* 69, for the preservation of alewives in Weweantit river. It was brought by the plaintiff as treasurer of the town of Wareham, for the several towns of Wareham, Rochester and Carver. There were several counts, framed upon different clauses of the statute, and charging different violations of its provisions by the defendant, but only one penalty was claimed. The defendant pleaded, 1. Not guilty ; and 2. *Nil debet.* Trial before *Shaw* C. J.

Ebenezer Crocker testified that he was the town clerk of Wareham, and produced the records of the town.

By the records it appears, that at the March meeting 1830, the plaintiff was chosen town treasurer.

It was objected that the meeting was not well warned and the plaintiff not duly chosen. The direction to the constable, in the warrant for calling the meeting, was, to warn by *posting up* notice. The return was, "Pursuant to the warrant I have notified" &c., without saying *how*. It was ruled that as this was the annual meeting for the choice of town officers, it must be intended that the warrant was in fact served by posting up, according to the direction, and that the meeting was regularly warned.

It was objected, that there was no sufficient evidence that the plaintiff was sworn. The town record was then offered, wherein was an entry by the clerk, after mentioning the choice of the plaintiff as treasurer, to this effect — "who took his oath before John Fearing esquire." It was then objected, that this was neither an oath administered by the clerk in open town meeting, nor by a justice of the peace who has returned a certificate thereof to be recorded, and so not within the statute. *St.* 1785, *c.* 75. But it was ruled, that this being done in open town meeting, by a justice of the peace, in presence of the clerk, his record of the fact was good evidence of the administration of the oath to the treasurer.

An objection was taken to the admission of the record of the town of Wareham, as made and kept by Crocker as clerk, on the ground that there was no competent evidence of his election and qualification. It appeared by the record of the annual meeting in March 1830, that Crocker was chosen clerk and sworn, but the whole record of the proceedings of that meeting, including the subscribing of his own election and oath, was made by himself as such clerk. It was ruled, that the record was competent evidence of his election and qualification.

The *St.* 1797, *c.* 69, provides that the several towns of Rochester, Wareham and Carver shall, at their town meeting in the fall of the year annually, respectively choose a committee of three persons in each town, whose duty it shall be to sell and regulate the privilege of taking alewives in those towns, and "said committee, before they enter upon the execution of their office, shall be sworn to the faithful and impartial performance of their duty, in the same manner as other town officers." The statute further provides, that "the owner or occupier of

any dam on said river shall annually, betwixt the first day of April and twenty-fifth day of May following, for such term and in such manner as said committee shall direct, open a sufficient sluice-way for the passage of said fish, and the owner or occupier of such dam neglecting to open, or to continue open a sluice-way as aforesaid, shall forfeit and pay the sum of fifty dollars : and the committee aforesaid shall have power to open such dam when neglected as aforesaid, at the expense of the owner or occupier."

Several exceptions were taken to the election and qualification of the committee.

By the record of Wareham it appeared, that at a meeting of the inhabitants on November 2, 1829, they " chose Perez F. Briggs, David Nye and John Fearing committee of herrings at the west end of the town." It also appeared by the warrant for calling this meeting, that one of the purposes therein expressed was, " to choose herring committee." Thereupon it was objected, that the herring committee expressed in the warrant, and the herring committee for the west end of the town, was not the committee contemplated by the statute, and was not invested with the powers intended to be conferred by the act upon such committee. But, it being admitted that in Wareham and its vicinity the names *herrings* and *alewives* are used indiscriminately, that the Weweantit river, which is frequented by that species of fish, lies in the west part of Wareham, that there is no other stream in that part of the town which is thus frequented, and that no other committee for the Weweantit river was chosen, it was ruled that there was competent evidence to go to the jury, that the herring committee thus chosen was the committee for the Weweantit river contemplated by the statute, and duly invested with the powers thereby given.

It was then objected, that there was no sufficient evidence that the committee was sworn, there being no entry to that effect in the town records, and no certificate of a magistrate returned and recorded. The plaintiff then offered parol evidence to prove that they were sworn.

Silvanus Bourne testified, that he was then town clerk, that the oath was administered to the committee by Benjamin Fear-

ing esquire in his presence, and in open town meeting, that he made a minute of it in his minute book in which the doings of the meeting were first entered, but he did not enter it in the regular records, because he expected that the magistrate would return a certificate, but no certificate was returned and Fearing has since deceased.

Benjamin Fearing testified, that he was one of the executors of the will of his father Benjamin Fearing esquire, and that he had the custody of his books and papers, and the record of his official acts as a magistrate, that he had found a record of his judicial proceedings, but had found no record or memorandum of the administration of oaths and other ministerial acts.

It was ruled, that the above evidence was competent to go to the jury, to prove that the committee was sworn.

It was further testified by Bourne, that the form of the oath administered to Briggs, Nye and Fearing, imported, in addition to the common form of an official oath, faithfully to discharge and perform their duty, something to this effect — " and that if any dam or other obstruction is placed in the way of the fish, it shall be removed agreeable to the statute," — whereupon one of the committee observed that this was unnecessary.

It was objected, that this committee was not chosen at a meeting duly warned. It appeared that the town meeting in November 1829 was warned by posting up notice at the town house ; that the preceding March meeting was warned by posting up notice at the house of Benjamin Fearing, and so that the November meeting was not warned in the usual manner ; and no mode of notifying having been agreed upon by the town, it was contended, that the warning of the November meeting being conformable neither to the vote of the town nor to usage, it was not well warned. Bourne testified, that the usual mode of notifying town meetings in years past was, by posting a notice on the door of the meetinghouse, which was then used for a town house ; that in March 1829 the meetinghouse was not standing ; that a town house has since been built in connection with the meetinghouse, since which notices have been posted on the town house. Upon this evidence the objection was overruled, and the meeting considered as duly warned.

It was therefore held, that there was competent evidence that the plaintiff as treasurer, and the committee on the part of the town of Wareham, were duly elected and qualified according to the provisions of the statutes.

The plaintiff next offered evidence of the election of a committee on the part of the town of Rochester.

It appeared by the certificate of Abraham Holmes, town clerk, that at a meeting of the inhabitants on October 12, 1829, Nathaniel Haskell, George King and Isaac Thompson were chosen " a committee as inspectors of Weweantit river."

It was objected that the persons thus chosen were not a committee chosen pursuant to the statute and entitled to exercise the powers given to that committee, being chosen inspectors of the river. But it appearing that no other committee was chosen for this purpose, and that the committee were denominated committee-men or inspectors indiscriminately, it was ruled, that it was competent for the jury, on this evidence, to find that the persons thus chosen were the committee on the part of the town of Rochester pursuant to the statute, and in vested with the powers given by the statute to that committee.

It was objected, that the meeting was not legally warned. The return of the officer certifies, that he has notified the inhabitants "as the law directs." It was ruled, for the purpose of the trial, that the meeting was duly warned and held.

Parol evidence was then offered to prove that the members of this committee were duly sworn by Charles J. Holmes esquire ; and that he made no record and gave no certificate thereof to be returned and recorded by the town clerk. This evidence was objected to, but the objection was overruled and the evidence admitted.

The plaintiff then offered evidence of the election of a committee on the part of the town of Carver.

It appeared by the records of the town, that at a town meeting on September 16, 1829, Gideon Shurtliff, Jesse Murdock and Lot Shurtliff were chosen " herring committee." Isaac Vaughan, town clerk, testified that all the fishing places in Carver communicate with the Weweantit river ; that the herrings all come up the Weweantit river to the several streams and ponds in that town ; and that no other herring committee

was chosen that year, nor more than one such in each yeaı for years past. It was ruled that this was competent evidence for the jury, that the persons thus chosen were a committee on the part of Carver chosen in pursuance of the statute.

To prove that this committee was sworn, the plaintiff called John Savory esquire, who testified that he administered an oath to G. Shurtliff, Murdock and L. Shurtliff in the fall of 1829, at a town meeting in Carver, in this form : — " You being chosen a committee to preserve the fish called herrings or alewives in the Weweantit river and its branches, will faithfully perform the duties of your trust." It was objected, not only that parol evidence ought not to be received for that purpose, but that the oath did not conform to that prescribed by the statute, which is, faithfully and impartially to perform &c. But it was ruled, that parol evidence was admissible ; and further, that as the statute did not prescribe a specific form, but only gave a general direction, this direction was substantially complied with by the oath above stated.

It was objected, that it did not sufficiently appear that this meeting was duly warned and held. The return of the officer on the warrant was without date, and was as follows : — "Agreeable to the within warrant I have notified the inhabitants of the town of Carver, of the time, place and purpose of the within meeting."

It was held, for the purpose of the trial, that this was competent evidence that the meeting was duly warned and held, and that the committee on the part of Carver were duly elected and qualified.

The plaintiff then offered evidence of the obstruction of the river and passage of the fish by the defendant, as charged in the declaration. It was proved that the defendant was the owner and occupant of a dam and mills at a place called the Poles, being the lowest dam on the Weweantit, adjoining tide water. A fish-way had been constructed, consisting of a number of steps, on a side cut, not in the direct line of the stream, for the herrings to pass up. On the 19th of April, 1830, the committee of the three towns met to examine the river, dam and fish-ways at the Poles. They found that the fish had begun to run, and after examination, voted that the fish-way was

in their opinion insufficient, and that the defendant, as owner and occupier, be required to open a passage on the main stream dam to the bed of the river ; of which requisition notice was given to the defendant, but he did not comply with it.   On the 21st the committee renewed this requisition, with an intimation, that if the defendant did not proceed to take up the dam in the manner required, by a certain hour, the committee would proceed to do it.   As the dam was not taken up or opened by the time named, the committee proceeded to take up the planks on the waste-way dam, and would have made an opening to the bed of the river had there been sufficient time that day. The next day the committee returned, and found that the planks had been replaced ; and on application to the defendant, he said he was accountable for it, though he did not do it nor order it to be done.

The committee then voted to prosecute, and instructed the plaintiff accordingly to bring this suit.   The statute enacts, " that the treasurers of the aforesaid towns respectively are hereby empowered, upon the complaint of any of the committee aforesaid, to sue for the recovery of any forfeitures " &c.   No complaint was made to the plaintiff in writing, but he was one of the committee, and they considered the vote as a sufficient complaint to him, that the way for the fish was in their judgment insufficient and unsatisfactory, and as a request to him to prosecute for the penalties.

The committee did not direct how wide a passage should be opened, nor for what length of time it should be kept open.

It was then contended, that there was a variance between the averment and the proof, and that the proof did not support the allegation.

In the fourth count, on which alone the plaintiff relied, it was averred, that the committee directed the defendant to open a sluice-way to the bed of the river and to keep the same open till the 12th of May.   Upon reference to the statute it appeared, that not opening a sluice-way when required, and not keeping the same open, are distinct offences, and subject to distinct penalties ; and it was ruled, that as the violation here assigned was the not opening, it was sufficient to prove that an order was given for opening the sluice-way, which was the substance

of the issue, and that the averment, that a direction was given that it should be kept open till the 12th of May, was not material, and so that there was no fatal variance.

It was further objected, that this direction was too uncertain, in not specifying the width to which the dam should be opened, and the time that it should be kept open. But it was considered, that as the statute left it to the discretion of the committee to fix the time it should be kept open, within certain limits, they were not bound to fix the time in the first instance, but might require it to be opened, for the purpose of experiment ; with which order the defendant was bound to comply, though without a further order he would not incur any penalty by not continuing the passage open.

As to the other ground of the objection, it was held that a direction to open the passage down to the bed of the main stream, though no particular width was specified, was sufficiently definite to require a compliance on the part of the defendant, the word *passage, ex vi termini*, meaning an opening in the dam of sufficient width to permit the water to run out freely and the fish to pass up.

The defendent then contended, that the requisition was unreasonable, and proposed to offer evidence to satisfy the jury, that the fish-way provided by him was sufficient and ought to be deemed satisfactory, that the requisition to open his dam to the bed of the main stream was unreasonable, that he was not bound to comply with it, and so had incurred no penalty by a non-compliance. But it was considered and ruled, that as he did not propose to prove that the committee acted corruptly or under sinister or unjustifiable motives, (which was disclaimed,) that as the committee were invested with a discretionary power to decide what kind of fish-way or passage would be sufficient and satisfactory, it was not an open question of fact for the jury to consider, whether the passage was reasonable and sufficient ; which would in effect be an appeal from the committee to the jury ; but if the committee, acting in good faith, and in execution of the power vested in them by the statute, declared the fish-way provided by the defendant to be insufficient and unsatisfactory, and required the defendant to make another and different one, the defendant was bound to comply with such

VOL. XIII.    27

Briggs<br><i>v.</i><br>Murdock

requisition, and by force of it would incur a penalty by a non-compliance ; and therefore the proposed evidence to the jury, upon the general question of reasonableness, was inadmissible.

The cause was by the consent of the parties withdrawn from the jury, and continued, subject to the opinion of the whole Court upon the foregoing facts.

*W. Baylies* and *Eddy* for the defendant. A penal statute, and one granting a special power affecting the property of individuals, ought to be strictly pursued, in order to lay a foundation for an action upon it. *The King* v. *Hervey*, 1 W. Bl. 20 ; *Rex* v. *Croke*, Cowp. 26 ; *Sprague* v. *Birdsall*, 2 Cowen, 419 ; *Gilbert* v. *Columbia Turnpike*, 3 Johns. Cas. 107.

For the protection of mill owners and to prevent misunderstandings and lawsuits, the statute on which this action is brought, ought to be so construed as to require the committee to define precisely the time and manner in which a fish-way through a mill dam shall be opened and be kept open ; more especially as no appeal lies from their order. *Spicer* v. *Slade*, 9 Johns. R. 359 ; *Rex* v. *Manning*, 1 Burr. 377 : 1 Chit. Pl. (edit. 1809) 316.

The statute did not contemplate such a deviation from the principles of the common law, as to give the committee a double remedy by removing the nuisance and also bringing an action for the penalty. 3 Bl. Com. 220 ; 1 Dane's Abr. 138, § 14 ; *Jasper* v. *Eadowes*, 11 Mod. 21 ; *Vasper* v. *Eddows*, 1 Salk. 248 ; Runnington on Ejectm. 80 ; *Elliott* v. *Brown*, 2 Wendell, 497.

It was competent to the defendant to go to the jury on the questions, whether there was not a sufficient sluice-way, according to the direction of the committee, and whether the direction was not unreasonable and therefore not binding on the defendant. *Stoughton* v. *Baker*, 4 Mass. R. 522 ; *Wales* v. *Stetson*, 2 Mass. R. 146 ; *Clark* v. *Phelps*, 4 Cowen, 190 ; *Leader* v. *Moxton*, 3 Wils. 461 ; *Sutton* v. *Clarke*, 6 Taunt. 43 ; *Callender* v. *Marsh*, 1 Pick. 418 ; *Lincoln* v. *Hapgood*, 11 Mass. R. 350 ; *Warne* v. *Varley*, 6 T. R. 443.

The action ought to have been founded upon a formal complaint in writing, made by one of the committee to the

plaintiff as treasurer of Wareham. Esp. on Penal Actions, 52 ; *Matter of Cooper*, 15 Johns. R. 533 ; *Gilbert* v. *Columbia Turnpike*, 3 Johns. Cas. 109.

Briggs
v.
Murdock.

In support of the objections, that the town meetings were not proved to have been regularly warned and held, they cited *Thayer* v. *Stearns*, 1 Pick. 109 ; *Rex* v. *Croke*, Cowp. 30 ; *Lancaster* v. *Pope*, 1 Mass. R. 86 ; — that the plaintiff, as town treasurer, and the committee, were not proved by legal evidence to have been elected and sworn, *Taylor* v. *Henry*, 2 Pick. 403 ; *St.* 1785, *c.* 75, § 2, 3 ; *St.* 1829, *c.* 54 ; *Sherman* v. *Needham*, 4 Pick. 66 ; *Colburn* v. *Ellis*, 5 Mass. R. 427 ; — that the terms in which the oaths were administered were insufficient, *Spring* v. *Lowell*, 1 Mass. R. 422 ; — and that the variance between the proof and the averments in the fourth count was fatal, 3 Stark. Evid. 1542.

*Wood* and *C. J. Holmes*, for the plaintiff, cited to the point, that the committee having acted in good faith and in pursuance of a discretionary power, the reasonableness of their proceedings could not be called in question, *Rex* v. *Young*, 1 Burr. 556 ; — that as it concerns third persons, the acts of the committee, as officers *de facto*, were valid, *The People* v. *Collins*, 7 Johns. R. 549 ; *Bucknam* v. *Ruggles*, 15 Mass. R. 180 ; *Piper* v. *Dennis*, 12 Mod. 253 ; *Doty* v. *Gorham*, 5 Pick. 487 ; — that there was sufficient proof that the town meetings were duly warned, and the plaintiff, as town treasurer, and the committee, were duly elected and sworn, *Hammatt* v. *Bassett*, 2 Pick. 564 ; *Welles* v. *Battelle*, 11 Mass. R. 477 ; *Saxton* v. *Nimms*, 14 Mass. R. 315.

WILDE J. afterwards drew up the opinion of the Court. This is an action of debt for a penalty brought upon the statute of 1797, *c.* 69, by the treasurer of the town of Wareham, as well for himself, as for the several towns of Wareham, Carver and Rochester. At the trial several preliminary questions were raised on objections made to the regularity of the proceedings of these towns under the statute, which, though formal and technical, must prevail, as this is a penal action, if the proceedings were not strictly regular.

It was in the first place objected, that the meeting of the town of Wareham, at which the plaintiff was chosen treasurer, was not legally warned, the return of the officer warning the meeting being defective, in not showing how the inhabitants were notified and warned. Although such an objection would hold good against the return of a sheriff on a common writ or precept, it does not follow that the same strictness is to be observed in the return of warrants for warning town meetings. Too much strictness on subjects of this nature, as Chief Justice *Parker* remarks in *Welles et al.* v. *Battelle et al.*, 11 Mass. R. 481, would throw the whole body politic into confusion. We think, therefore, the return is well enough, and that returns in this form are usual, and have been uniformly held good. *Saxton* v. *Nimms*, 14 Mass. R. 315 ; *Thayer* v. *Stearns*, 1 Pick. 109.

It was in the next place objected, that there was no sufficient evidence that the plaintiff was sworn. But it is expressly certified by the town clerk that he was, and that he took his oath before John Fearing esquire. This appears by the town record, and it is competent and abundantly sufficient evidence to establish the fact, that the plaintiff was duly sworn into office. The oath was administered by the justice, in open town meeting, in presence of the town clerk, and it was his duty to make a record of this as well as of other doings in the meeting.

So it was competent for him to make a record of his own election and qualification, from the necessity of the case, and the record or a copy is competent evidence.

In the course of the trial several exceptions were taken to the due elections and qualifications of the committees required to be chosen by the statute. One of these committees, as designated in the record, was chosen by the town of Wareham as a *herring* committee, or "committee of *herrings* at the west end of the town." It is objected that this does not appear to be such a committee as was contemplated by the statute, and that it ought to appear that they were chosen as a committee for the preservation of *alewives*. But it was admitted, that at Wareham and in its vicinity, the names

"herrings" and "alewives" are used indiscriminately, and that the Weweantit river, which is frequented by that species of fish, lies in the west end of the town of Wareham, and that there is no other stream in that part of the town which is thus frequented ; and these facts show clearly that the committee was chosen for the purposes contemplated in the statute, and were duly invested with the powers intended to be conferred thereby. They were also duly qualified, as the clerk testifies, and as, for reasons given by him, the minutes of the administering of the oath were never recorded, parol evidence to prove the fact was competent. *Bassett* v. *Marshall*, 9 Mass. R. 312.

We think also there is no valid objection to the form of the oath administered. It was substantially in conformity with the requisitions of the statute. No particular form of oath is prescribed.

The objections taken to the election of the committees in the towns of Rochester and Carver, and to the supposed irregularity of the proceedings of those towns, appear to us to have been rightly overruled at the trial, and for the reasons stated in the report.

In Rochester the committee is designated as " a committee as inspectors of Weweantit river." The meaning and the object of the choice cannot well be misunderstood, and we think it was properly left to the jury to decide whether this committee was not chosen for the purposes contemplated by the statute.

In the town of Carver the committee chosen are only designated as the herring committee. This, without further proof, would probably be considered too loose and uncertain, as there might be herring committees appointed for other rivers in the town. But this uncertainty or ambiguity might be removed, as it was allowed to be, by parol evidence. It was a latent ambiguity, depending on the fact, that there were other rivers in the town. If there had been no other river or stream in the town, the description of the committee in the record would be sufficiently certain.

The other objections to the proceedings of these towns need not to be particularly noticed. The reasons for over-

27 *

Briggs
*v.*
Murdock.

ruling them sufficiently appear in the report of the case, or have been noticed already in considering other objections.

The remaining questions to be considered, relate to the proceedings of the committees of the three towns and the conduct of the defendant as to the obstruction complained of. An objection, however, has been made to the form of the declaration, which was overruled at the trial, and for reasons entirely satisfactory. It is averred in the fourth count, that the committee directed the defendant to open a sluice-way in his dam to the bed of the river, and *to keep the same open till the 12th of May.* The proof was, that there was no direction given for what length of time the sluice-way should be kept open. And it was contended that this was a material variance. But the penalty sued for is for a breach of the first part of the direction as set out in the declaration, in not opening a sluice-way, and this was a distinct offence. The breach of the other part of the direction would have been another offence; but no breach of that part of the direction is alleged in the declaration, and the direction in this respect is surplusage, which the plaintiff was not bound to prove. But if a breach of this part of the direction had been alleged, and the plaintiff had claimed two penalties, the objection of variance would not apply. If a plaintiff proves a part of his declaration, and the part proved is sufficient to maintain his action, it is no valid objection, that the whole declaration is not proved. The direction of the committee, as alleged in the declaration, is divisible, and the breach proved is by the statute a distinct offence, to which a penalty is annexed, and which the plaintiff is well entitled to recover. Nor is it any valid objection to the direction of the committee, that it did not fix the time the sluice-way was to be kept open. There was no necessity that this should be determined in the first instance. That might be well done by a subsequent order. And in other respects, we are of opinion that the direction was sufficiently definite.

The last and most important objection is, that the direction of the committee was unreasonable, with which the defendant was not by law bound to comply; and the defendant's

counsel contend that this was a proper question to be submitted to the consideration of the jury. But as they did not propose to prove at the trial, that the committee acted corruptly, or under sinister or unjustifiable motives, which was disclaimed, and as the committee were invested with discretionary prowers to decide what kind of fishway or passage would be sufficient, the chief justice was of opinion, that this was not an open question proper to be submitted to the jury, and he ruled accordingly, that the defendant was bound by the determination of the committee.

On this point the adjudged cases do not all harmonize, but we think the weight of authority and of reason is in favor of the decision of the chief justice.

In *Warne v. Varley*, 6 T. R. 443, it was decided, that searchers of leather were not justified in seizing leather, to carry it before triers, although they acted *bonâ fide*, and believed the leather was not sufficiently dried ; and the reason given is, because the *Stat.* 2 *Jac.* 1, *c.* 22, only authorizes them to seize leather of a particular description. This case differs from the present, as the searchers, by the statute, were not authorized to determine what leather was sufficiently dried, and consequently were mere ministerial officers ; and they were likened to custom-house officers, who, before they were protected by statute, were not justified in seizing goods, if it turned out that the goods were not subject to seizure, even though there was a probable cause for seizing them.

The case of *Schinotti v. Bumsted et al.*, 6 T. R. 646, would seem at first sight to be more in point in favor of the defendant. It was there decided, that an action might be maintained against the commissioners of a lottery for not adjudging a prize to the holder of a ticket entitled to receive i'. But that case also was decided on the ground that the commissioners were ministerial officers, although the statute provides, " that if any contention or dispute shall arise in adjusting the property of the said fortunate ticket, the major part of the said managers and directors agreeing therein shall determine to whom it doth or ought to belong." *Lawrence* J. says that the above clause in the statute does not give them (the commissioners or managers) judicial authority **to**

Briggs
*v.*
Murdock.

decide between contending parties, which of them is entitled to any prize, but merely to decide among themselves in case they are divided in opinion. Whether this is the true construction of the clause in the statute may be doubtful, but it was on that ground that it was decided that the commissioners were ministerial officers.

In *Rex* v. *Young et al.*, 1 Burr. 556, it was decided, that where a discretionary power was given to justices to grant licenses, and they refused to grant a license to an applicant, no information or action would lie against them, unless some charge of corruption, partiality or other imputation could be proved. Lord *Mansfield* says, " that this court had no power or claim, to review the reasons of justices of peace, upon which they form their judgments in granting licenses, by way of appeal from their judgments, or overruling the discretion intrusted to them."

In *Sutton* v. *Clarke*, 6 Taunt. 29, it was held, that a person who, in the exercise of a public function, which he is compelled to execute, acting without malice, and according to his best skill and diligence, and obtaining the best information he can, does an act which occasions consequential damage to a subject, is not liable to an action for such damage.

These cases, although they do not perfectly agree in some respects, seem to establish this distinction, that where officers act ministerially, their acts and decisions are liable to be reviewed in the higher courts, and they are responsible for any mistakes they may make to the prejudice of another ; but where they are invested with a discretionary power, and are authorized to decide according to their best skill and judgment, their decisions, if made fairly, are decisive, unless the law allows an appeal from their judgments.

And we are all of opinion, that the committee in this case were invested with a discretionary power to decide on the sufficiency of the passage-way mentioned in the report, and that the reasons of their decision cannot be inquired into in this action. If the legislature had intended otherwise, doubtless provision would have been made for an appeal to some other tribunal. But it is apparent from the 5th section, that

the determination of the committee was intended to be conclusive as to the sufficiency of the sluice-way. It is to be opened " *in such manner as said committee shall direct*," and the owner or occupier of any dam, neglecting to open a sluice-way accordingly, shall forfeit the penalty sued for. The forfeiture, therefore, has been incurred by the express words of the statute, and the plaintiff is well entitled to recover it in this action.

*Judgment for plaintiff.*

A question was subsequently brought before the Court in relation to the costs.

*Eddy* and *Miller*, for the defendant, cited *Chace* v. *Tucker*, 2 Pick. 27 ; *Andrews* v. *Austin*, ibid. 528.

*Wood* and *Beal* for the plaintiff.

WILDE J. delivered the opinion of the Court. On the question of costs it has been argued by the plaintiff's counsel, that he ought to be allowed his costs as well in this Court as in the Court of Common Pleas, although he brought up the case by appeal and is not entitled to recover more than $ 100 for his debt or damages. By the *St.* 1820, *c*. 79, § 4, he is not so entitled, but the defendant is entitled to costs since the appeal, unless it shall be certified by this Court that there was reasonable cause for the appeal ; and upon the facts agreed we cannot certify that there was any such reasonable cause. The plaintiff, in the court below, not being prepared for trial, moved the court for a continuance, which was granted on terms which his counsel considered unreasonable, and therefore suffered judgment to be rendered against him for want of proof, and thereupon entered an appeal. And if the terms imposed had appeared to us unreasonable, we should consider the course pursued by the plaintiff reasonable, so as to entitle him to a certificate. For although no legal exception can be taken to the opinions and decisions of the Court of Common Pleas in matters depending on the discretionary power vested in that court, yet in deciding the question whether the appeal was reasonable or not, we must take into consideration all the circumstances of the case, and are bound to decide the point according to our own opinion as to the reasonableness of the

course pursued. But we perceive nothing unreasonable in the terms upon which the motion for a continuance was granted, and therefore the certificate prayed for must be denied. The plaintiff will accordingly be allowed his costs in the Court of Common Pleas only ; and the defendant is to be allowed his costs on the appeal and to have a separate judgment therefor as the statute directs.